394 P.2d 149

MARSHALL–BARRON, INC., (NSL), Plaintiff-Appellee,

v.

MINE SUPPLY, INC., (NSL), Defendant-Appellant.

No. 7405.

Supreme Court of New Mexico.

July 20, 1964.

J. Wayne Woodbury, Silver City, for appellant.

Foy & Vesely, Silver City, for appellee.

FRANK B. ZINN, District Judge.

One defendant of three losing corporate defendants in the court below is appellant here. It seeks reversal of a judgment awarded appellee, an insurance agency, for the balance of the premium due on a policy of insurance on some mining property. The judgment was entered jointly and severally against the three defendants. Only Mine Supply, Inc., has appealed.

Appellee contended that the policy was ordered from the insurance agency representative, Barron, by one R. R. Davis, who was then sales manager and a vice-president of appellant corporation. Appellee contends the policy was ordered for Mine Supply and the other defendants. Appellant Mine Supply made a payment of $750.00 to the appellee to apply on the premium due three months subsequent to issuance of the policy.

Mine Supply's position is that Davis did not act in behalf of that company in ordering that policy. They do admit that they made the $750.00 premium payment as their proportionate share of the premium.

R. R. Davis was also an officer in the defendant corporation Atlantic-Western Mining Co., one of the named insureds in the policy as originally issued.

Atlantic-Western had a leasehold interest in the mining property at the time material to this action. The property was owned by the other defendant, Elayer Corp. Elayer had mortgaged the property to appellant Mine Supply to secure a sizeable loan.

The issuance of the policy followed a flying trip to Wyoming for a survey of the property. The trip was made in a plane owned by appellant. Other than the pilot, the appellee's man, Barron, was accompanied on the trip by R. R. Davis and appellant's counsel, J. Wayne Woodbury.

The several points on appeal challenge all findings that connect Mine Supply, Inc., as a party to the ordering of the insurance policy. These are contested as unsupported in the evidence. The conclusions resting on these findings of fact are also challenged.

The trial court, in its conclusion of law number one, stated that,

"* * * R. R. Davis was the * * * officer of Mine Supply, * * * and the * * * policy * * * was issued at his request and on his orders.

That the policy was delivered to him as such officer * * *."

The court's third conclusion:

"That as the moving force in securing the issuance of this policy Mine Supply, * * * is responsible for the premium for the insurance policy."

(Omitted are some repeated findings of fact not essential to the ultimate part of the conclusion.)

These were the principal conclusions supporting the judgment against the appellant and challenged in this appeal. Other conclusions challenged were number six, which appears to merely repeat the conclusion of liability stated in conclusion number three, and number seven, which, while again repeating the issue of appellant's liability, also fixes the amount due, which amount is not challenged as to correctness.

The ultimate findings of fact on which these challenged conclusions appear founded we quote, but summarize by omission of non-essential words:

"2. That at all times material * * R. R. Davis was an officer and service manager of Mine Supply * * * and Atlantic-Western Mining Company * * * and that such (sic) was empowered to make purchases and enter into contracts in behalf of said corporation (sic)."

"5. That between the years 1954 and 1957, R. R. Davis had purchased insurance policies for Mine Supply Incorporated from the plaintiff and Mine Supply Incorporated had paid for said policies."

"6. That without stating for whom he was purchasing the policy in question, the said R. R. Davis ordered a policy of insurance made out to Elayer Company Incorporated and Atlantic-Western Mining Company as the insured with a rider to cover any loss to Mine Supply Incorporated as mortgagee. That this policy was issued by the plaintiff and delivered to R. R. Davis in Silver City, Grant County, New Mexico."

Finding number six is challenged as unsupported in the evidence. The statement of the witness Davis is offered, wherein he states he ordered the policy for the Atlantic-Western Company in his capacity as an officer of that company, and also that Mr. Elayer of the defendant Elayer Company jointly ordered it with him. This witness also denied that he acted on behalf of Mine Supply in ordering this policy. This evidence, while contra to the court's finding, does not necessarily require the court's finding to fail if there is other evidence from which the court might find as it did. Gladin v. Compton, 72 N.M. 175, 381 P.2d 961; Sanchez v. Garcia, 72 N.M. 406, 384 P.2d 681.

Appellant cites and quotes the testimony of the witness Barron as being the only other possible support for the finding that Davis did not state for whom he was ordering the policy. Appellee also refers to the same witness' testimony without quotation as supporting the finding.

A finding of substantial evidence to support a finding of fact by the trial court ends this Court's review of the finding. The cases in support of this principle are too numerous to cite and the principle too well known to need such support.

Accepting then that Davis did not say for whom he was acting, there must be some other basis for the finding that the appellant was in fact a party to the contract of ordering the policy and thus liable for the consideration, the premium.

The act of Davis is not challenged as being beyond the scope of his authority as Mine Supply's officer, but only challenged as not having been done for that company. Even without a specific statement by Davis that he was acting for Mine Supply, it is possible to find an implied in fact contract between Mine Supply and the plaintiff for the purchase of the policy.

In 17 C.J.S. Contracts § 4, p. 560, on the subject of implied contracts, it is stated:

"The implication of a mutual agreement, of course, must be a reasonable deduction from all the circumstances and relations of the parties, such as was within the contemplation of the parties when making the contract, or else necessary to carry their intention into effect; * * *. However, an implied contract need not be evidenced by any precise words, and may result from random statements and uncertain language; and an implied contract may be proved by circumstances showing that the parties intended to contract, and by the general course of dealing between them. Any conduct of one party from which the other party may reasonably draw the inference of a promise is effective in law as such, and conduct of the parties is to be viewed as a reasonable man would view it to determine the existence or not of an implied in fact contract."

Here we have the court's findings numbers five and ten covering previous dealings for the purchase of insurance policies. We also have evidence of the flying trip in appellant's airplane at Davis' request to make the survey of property to be insured. There is appellant's insurable interest as mortgagee. All of these facts could justify the witness Barron's conclusion that he was dealing with Davis for Mine Supply and the court's findings and conclusions of appellant's liability.

The appellant's challenges to finding number seven, which related to the later policy ordered and paid for by Mine Supply;

finding eight, principally relating to the $750.00 payment; finding nine, relating to the payment being unqualified, all relate to subsequent acts and were unnecessary to support the conclusions reached.

It appears that the court's finding that appellant Mine Supply was a party to the original agreement to purchase the insurance was supported in the evidence and supports the conclusion as to appellant's liability.

Appellant's several points are resolved against it, and the judgment of the trial court is affirmed. It is so ordered.

CARMODY and NOBLE, JJ., concur.